2/27/2006   **FILED**   13:29
SA06-10195JR
DEBTOR:
    Rucker, Lloyd Myles
JUDGE:   John E. Ryan   A400
TRUSTEE:
CHAPTER:   7   AD
---

CLERK, U. S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIF.   ID: E-F
RECEIPT NO:   $ 250.00

Summons Issued   02/27/2006
Answer Date   3/29/2006
Hrg. Date   05/16/2006   at   01:30 PM

**WEILAND, GOLDEN,
SMILEY, WANG EKVALL & STROK, LLP**
Evan D. Smiley, State Bar No. 161812
Kyra E. Andrassy, State Bar No. 207959
650 Town Center Drive, Suite 950
Costa Mesa, California  92626
Telephone: (714) 966-1000
Facsimile:   (714) 966-1002

**BIENERT & KRONGOLD**
Thomas Bienert, State Bar No. 135311
115 Avenida Miramar
San Clemente, California 92672
Telephone: (949) 369-3700

**FLORATOS, LOLL & DEVINE**
William Floratos, State Bar No. 107820
Robert Loll, State Bar No. 117686
18881 Von Karman Avenue, Suite 220
Irvine, California 92612
Telephone: (949) 553-1910

Attorneys for Dr. Ronald Cunning, an individual and as trustee for the Ronald Cunning D.D.S., Inc. Profit Sharing Plan and Trust and the Cunning Family Trust

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SANTA ANA  DIVISION

| | |
|---|---|
| In re<br><br>LLOYD MYLES RUCKER,<br><br>        Debtor.<br>_____<br>DR. RONALD CUNNING, an individual and as trustee for the RONALD CUNNING D.D.S., INC. PROFIT SHARING PLAN AND TRUST and the CUNNING FAMILY TRUST,<br><br>        Plaintiff,<br><br>vs.<br><br>LLOYD MYLES RUCKER,<br><br>        Defendant.<br>_____ | Case No.: SA 06-10195 JR<br><br>Chapter 7 Case<br><br><br><br>**COMPLAINT TO DETERMINE NONDISCHARGEABILITY OF DEBT**<br><br>**Status Conference:**<br>DATE:   [Not yet set]<br>TIME:   [Not yet set]<br>CTRM:   5A |

Plaintiff Dr. Ronald Cunning ("Dr. Cunning"), as an individual and as trustee for the Ronald Cunning D.D.S., Inc. Profit Sharing Plan and Trust (the "Profit Sharing Plan") and the Cunning Family Trust (the "Family Trust"), is informed and believes, and based thereon, respectfully alleges as follows:

## STATEMENT OF JURISDICTION AND VENUE

1. The Bankruptcy Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and 11 U.S.C. §§ 523 and 105.

2. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

3. Venue properly lies in this judicial district and this civil proceeding arises under title 11 of the United States Code as provided in 28 U.S.C. § 1409.

## PARTIES TO THE ACTION

4. Plaintiff is a judgment creditor of Lloyd Myles Rucker (the "Debtor") by virtue of (1) a general verdict in favor of Dr. Cunning in the amount of $391,097 and a special verdict assessing punitive damages in favor of Dr. Cunning in the amount of $500,000, (2) a general verdict in favor of the Profit Sharing Plan in the amount of $574,631 and a special verdict assessing punitive damages in favor of the Profit Sharing Plan in the amount of $500,000, and (3) a general verdict in favor of the Family Trust in the amount of $583,009 and a special verdict assessing punitive damages in favor of the Family Trust in the amount of $500,000. These verdicts were rendered by a jury in the Orange County Superior Court, case number 65-35-26, and are final judgments.

5. Defendant is the Debtor, who is the debtor in bankruptcy case number SA 06-10195 JR, which was originally filed under chapter 7 of title 11 of the United States Code in the United States Bankruptcy Court, Southern District of Florida, Miami Division, and transferred to this Court by order entered on February 9, 2006.

## GENERAL ALLEGATIONS

6. Dr. Cunning was a dentist who also invested in real estate. Dr. Cunning was introduced to the Debtor and the Debtor's former wife, Lori Rucker, by a local real estate broker named Christopher Bennett. The Debtor represented that he was a certified public accountant and a general building contractor licensed by the State of California. The Debtor told Dr. Cunning that he had several successful real estate projects and supplied Dr. Cunning with documentation identifying several projects that the Debtor had allegedly purchased, developed, constructed, and sold for a substantial profit, providing Dr. Cunning with what he said were the specific acquisition costs, construction costs, and return on each of the projects. The Debtor then gave Dr. Cunning tours of these projects in order to induce Dr. Cunning to invest with the Debtor in other development and construction projects.

7. Dr. Cunning was induced by the Debtor's representations to enter into two joint venture agreements with the Debtor for the construction of fifteen single-family residences. These projects were located in Newport Heights, with one project consisting of seven single-family residences on 15th Street and another project consisting of eight single-family residences on 16th Street. Dr. Cunning provided the initial capital to purchase the properties and guaranteed the construction loans for the fifteen residences. The Debtor was to receive a six-figure fee for acting as the accountant to the joint venture as well as the licensed general contractor, and was also to share equally in the anticipated profits from the projects.

8. After entering into the joint venture agreements with the Debtor and providing the funding and loans required of him, Dr. Cunning began to experience great difficulty in obtaining financial information and information about the status of the projects from the Debtor. The Debtor failed to provide this information despite repeated requests.

9. Subsequently, Dr. Cunning was contacted by Christopher Bennett, who claimed that a written agreement existed between he and the Debtor pursuant to which Mr. Bennett was to receive a percentage interest in any project that Dr. Cunning pursued

with the Debtor. The Debtor denied that any such agreement existed. Christopher Bennett then contacted Dr. Cunning again and offered to provide Dr. Cunning with a copy of the written agreement. Dr. Cunning also learned from Mr. Bennett that the Debtor had secretly conducted a double escrow in the acquisition of the 15th Street project, making an undisclosed profit of $100,000 for himself when the property was purchased for the joint venture. The Debtor claimed that the written agreement was forged. Mr. Bennett then brought an action against both the Debtor and Dr. Cunning to enforce his agreement against the Debtor with regard to his ownership interest in the two joint venture projects. During the investigation, Dr. Cunning discovered acts of fraud, conversion, breach of fiduciary duty, and breach of contract by the Debtor as further described in this complaint.

    10. The Debtor actively obstructed this investigation. He instructed the banks to not permit Dr. Cunning or his agents to review the construction loan records. However, Dr. Cunning's counsel was able to gain access to some of the construction loan records and based on that review, discovered discrepancies including cost over runs on all initial items without any explanation and charges that were clearly improper. Among these improper charges were charges for a subcontractor, R.A. Steel, for purportedly supplying and installing structural steel on the 16th Street project. However, there was no structural steel incorporated into that project. Many other subcontractors were found to have done the same thing at the Debtor's request and instruction. This and other items that were discovered by Dr. Cunning's representatives were raised to the Debtor, who denied any wrongdoing or mistake and claimed that all of the charges were proper. The Debtor continued to refuse to allow the inspection of the records for the projects.

    11. However, records obtained from third parties disclosed that these were not isolated incidents but were instead a pattern of continued conduct by the Debtor in which he was instructing subcontractors on projects in which Dr. Cunning had no interest to change their billing or invoicing to misrepresent that their projects were provided in

connection with either the 15th Street project or the 16th Street project so that their services would be paid from those construction loans. The Debtor refused to honor proper discovery requests and produced altered and falsified documents. These incidents proved to be so numerous and systemic that the Orange County Superior Court referred the matter for an accounting and appointed retired Orange County Superior Court Judge Philip Schwab to act as the Court's referee. In this capacity, Judge Schwab appointed the accounting firm of Leventhal & Company to act as the Court's accountant to analyze the costs incurred in the development and construction of the 15th Street Project and the 16th Street Project and to report back as to which charges were properly allocated to the joint venture and which charges were properly allocated to each joint venture partner. The Debtor continued to refuse to cooperate with either the Court-appointed referee or Levanthal & Company or with a receiver that had been appointed to complete and sell the projects. The Debtor refused to pay for his portion of the costs of the receivership, the estate, the referee, or the Court-appointed accountant. The Debtor's obstructive conduct made the accounting so difficult and expensive that the fees and costs of the Court-appointed referee and accountant exceeded $200,000.00.

12. The investigation by Dr. Cunning and the Court revealed that in addition to diverting construction funds through improper billing by subcontractors, the Debtor employed other equally devious methods for improperly withdrawing and diverting the construction loans funds for the 15th Street and 16th Street projects. These methods included submitting items from the Debtor's personal and business overhead, such as receiving payment of his office rent by representing to the lender that the charges were for temporary sanitary facilities at the construction sites and submitting reimbursement requests for his own employees' expenses for salary and compensation for work unrelated to the 15th Street and 16th Street projects.

13. During the trial on the accounting, the Court found that the Debtor had failed to comply with various orders compelling him to produce documents and information with regard to the accounting and that the Debtor had acted in bad faith on a

number of occasions, and it issued evidentiary sanctions against the Debtor. The Court-appointed referee and accountants eventually reported to the Orange County Superior Court that the Debtor had diverted in excess of $1.1 million from the 15th Street and 16th Street projects for his own benefit.

14. In addition, during the course of the litigation, Dr. Cunning's representatives began to investigate the claims and representations by the Debtor that were used to induce Dr. Cunning to invest with the Debtor. Dr. Cunning discovered that the Debtor was neither a certified public accountant nor a licensed building contractor and had never been one. Dr. Cunning also learned that the projects that the Debtor had used as evidence of his successful "track record" in order to induce Dr. Cunning to invest were not legitimate projects and were simply more examples of the Debtor's illegal and fraudulent schemes. Most of the projects involved falsified loan applications and phony sales prices to straw buyers recruited by the Debtor.

15. The Federal Bureau of Investigation conducted its own investigation and subsequently referred the Debtor to the Office of the United States Attorney for prosecution. A jury convicted the Debtor of several felony counts, some of which directly arose from the 15th Street and 16th Street projects.

16. Despite the Debtor's continued obstructive conduct with Dr. Cunning, Dr. Cunning was finally able to bring the matter to trial. By then, the receiver had sold the properties involved in the 15th Street and 16th Street projects, requiring Dr. Cunning to pay for the deficiencies between the construction loans and the sales proceeds. After a jury trial, the jury rendered its verdict with special findings, including fraud, breach of fiduciary duty, fraudulent inducement, and conversion.

17. Specifically, the jury rendered the following verdicts: (1) a general verdict in favor of Dr. Cunning individually in the amount of $391,097 and a special verdict assessing punitive damages in favor of Dr. Cunning individually in the amount of $500,000; (2) a general verdict in favor of the Profit Sharing Plan in the amount of $574,631 and a special verdict assessing punitive damages in favor of the Profit Sharing

Plan in the amount of $500,000; and (3) a general verdict in favor of the Family Trust in the amount of $583,009 and a special verdict assessing punitive damages in favor of the Family Trust in the amount of $500,000. The jury found that the Debtor's conduct was oppressive, malicious, and fraudulent. The judgments are final.

### FIRST CLAIM FOR RELIEF

**(To determine nondischargeability of the judgment in favor of Dr. Cunning individually pursuant to 11 U.S.C. § 523(a)(2)(A))**

18. Plaintiff realleges and incorporates by this reference each and every allegation set forth in paragraphs 1 through 17 of this complaint.

19. In awarding Dr. Cunning $391,097 in general damages, the jury found that the Debtor had made a representation to Dr. Cunning as to a material fact that was false, that the Debtor knew the representation was false and made it with the intention of defrauding Dr. Cunning, that Dr. Cunning justifiably acted in reliance on the truth of the representation, and that the Debtor's misrepresentation caused Dr. Cunning damages of $391,097. The jury also found that the Debtor concealed or suppressed a material fact with the intent to defraud Dr. Cunning, who was unaware of that fact when he acted, that Dr. Cunning would have acted differently had he known of the concealed or suppressed fact, that the concealment or suppression caused Dr. Cunning damages of $391,097.00. The jury further found that in committing fraud against Dr. Cunning, the Debtor's conduct was oppressive and malicious and fraudulent, justifying an award of punitive damages of $500,000.

20. This debt is nondischargeable under 11 U.S.C. § 523(a)(2)(A) because it was incurred through false pretenses, a false representation, actual fraud, and/or fraud in the inducement.

21. Accordingly, the entire amount of the judgment in favor of Dr. Cunning individually is nondischargeable under 11 U.S.C. § 523(a)(2)(A).

## SECOND CLAIM FOR RELIEF

**(To determine nondischargeability of the judgment in favor of Dr. Cunning individually pursuant to 11 U.S.C. § 523(a)(4))**

22. Plaintiff realleges and incorporates by this reference each and every allegation set forth in paragraphs 1 through 17 of this complaint.

23. In awarding Dr. Cunning $391,097 in general damages, the jury found that the Debtor owed a fiduciary duty to Dr. Cunning, that he breached that fiduciary duty, and that the breach caused Dr. Cunning damages of $574,631. The jury further found that in committing the breach of fiduciary duty against Dr. Cunning, the Debtor's conduct was oppressive and malicious and fraudulent, justifying an award of punitive damages of $500,000.

24. Because the Debtor owed a fiduciary duty to Dr. Cunning and breached this duty, giving rise to the judgment against the Debtor in favor of Dr. Cunning, the entire amount of the judgment should be determined to be nondischargeable under 11 U.S.C. § 523(a)(4).

## THIRD CLAIM FOR RELIEF

**(To determine nondischargeability of the judgment in favor of Dr. Cunning individually pursuant to 11 U.S.C. § 523(a)(6))**

25. Plaintiff realleges and incorporates by this reference each and every allegation set forth in paragraphs 1 through 17 of this complaint.

26. In awarding Dr. Cunning general damages of $391,097, the jury found that the Debtor wrongfully exerted dominion over Dr. Cunning's separate property in denial of or inconsistent with his rights therein and that the Debtor's conversion caused Dr. Cunning damages of $391,097. The jury further found that in committing the tort of conversion, the Debtor's conduct was oppressive and malicious and fraudulent, justifying an award of punitive damages of $500,000.

27. The judgment against the Debtor and in favor of Dr. Cunning individually is for willful and malicious injury by the Debtor to Dr. Cunning and to Dr. Cunning's property.

28. Accordingly, the entire amount of the judgment is nondischargeable under 11 U.S.C. § 523(a)(6).

## FOURTH CLAIM FOR RELIEF

**(To determine nondischargeability of the judgment in favor of Dr. Cunning as trustee of the Profit Sharing Plan pursuant to 11 U.S.C. § 523(a)(2)(A))**

29. Plaintiff realleges and incorporates by this reference each and every allegation set forth in paragraphs 1 through 17 of this complaint.

30. In awarding Dr. Cunning on behalf of the Profit Sharing Plan $574,631 in general damages, the jury found that the Debtor had made a representation to Dr. Cunning as to a material fact that was false, that the Debtor knew the representation was false and made it with the intention of defrauding the Profit Sharing Plan, that Dr. Cunning, on behalf of the Profit Sharing Plan, justifiably acted in reliance on the truth of the representation, and that the Debtor's misrepresentation caused the Profit Sharing Plan damages of $574,631. The jury also found that the Debtor concealed or suppressed a material fact with the intent to defraud Dr. Cunning, as trustee for the Profit Sharing Plan, who was unaware of that fact when he acted, that Dr. Cunning would have acted differently on behalf of the Profit Sharing Plan had he known of the concealed or suppressed fact, and that the concealment or suppression caused the Profit Sharing Plan damages of $574,631. The jury further found that in committing fraud against the Profit Sharing Plan, the Debtor's conduct was oppressive and malicious and fraudulent, justifying an award of punitive damages of $500,000.

31. The entire amount of the judgment owed by the Debtor to Dr. Cunning on behalf of the Profit Sharing Plan is nondischargeable under 11 U.S.C.

§ 523(a)(2)(A) because it was incurred through false pretenses, a false representation, actual fraud, and/or fraud in the inducement.

32. Accordingly, the entire amount of the judgment in favor of Dr. Cunning on behalf of the Profit Sharing Plan is nondischargeable under 11 U.S.C. § 523(a)(2)(A).

### FIFTH CLAIM FOR RELIEF

**(To determine nondischargeability of the judgment in favor of Dr. Cunning on behalf of the Profit Sharing Plan under 11 U.S.C. § 523(a)(4))**

33. Plaintiff realleges and incorporates by this reference each and every allegation set forth in paragraphs 1 through 17 of this complaint.

34. In awarding Dr. Cunning on behalf of the Profit Sharing Plan $574,631 in general damages, the jury found that the Debtor owed a fiduciary duty to the Profit Sharing Plan, that he breached that fiduciary duty, and that the breach caused the Profit Sharing Plan damages of $574,631. The jury further found that in committing the breach of fiduciary duty against the Profit Sharing Plan, the Debtor's conduct was oppressive and malicious and fraudulent, justifying an award of punitive damages of $500,000.

35. Because the Debtor owed a fiduciary duty to the Profit Sharing Plan and breached this duty, giving rise to the judgment against the Debtor in favor of Dr. Cunning on behalf of the Profit Sharing Plan, the entire amount of the judgment should be determined to be nondischargeable under 11 U.S.C. § 523(a)(4).

### SIXTH CLAIM FOR RELIEF

**(To determine nondischargeability of the judgment in favor of Dr. Cunning on behalf of the Profit Sharing Plan under 11 U.S.C. § 523(a)(6))**

36. Plaintiff realleges and incorporates by this reference each and every allegation set forth in paragraphs 1 through 17 of this complaint.

37. In awarding Dr. Cunning on behalf of the Profit Sharing Plan $574,631 in general damages, the jury found that the Debtor wrongfully exerted dominion over

Dr. Cunning, in his capacity as trustee of the Profit Sharing Plan, and over the property of the Profit Sharing Plan and that the conversion caused the Profit Sharing Plan damages of $574,631. The jury further found that in committing the tort of conversion, the Debtor acted oppressively, maliciously, and fraudulently, justifying an award of punitive damages of $500,000 against the Debtor in favor of Dr. Cunning on behalf of the Profit Sharing Plan.

38. Because the entire amount of the judgment against the Debtor and in favor of Dr. Cunning on behalf of the Profit Sharing Plan is the result of a willful and malicious injury to the Profit Sharing Plan or its property, it should be determined to be nondischargeable under 11 U.S.C. § 523(a)(6).

## SEVENTH CLAIM FOR RELIEF

**(To determine nondischargeability of the judgment in favor of Dr. Cunning on behalf of the Family Trust under 11 U.S.C. § 523(a)(2)(A))**

39. Plaintiff realleges and incorporates by this reference each and every allegation set forth in paragraphs 1 through 17 of this complaint.

40. In awarding Dr. Cunning on behalf of the Family Trust $583,009 in general damages, the jury found that the Debtor had made a representation to Dr. Cunning as trustee of the Family Trust as to a material fact that was false, that the Debtor knew the representation was false and made it with the intention of defrauding Dr. Cunning and the Family Trust, that Dr. Cunning on behalf of the Family Trust justifiably acted in reliance on the truth of the representation, and that the Debtor's misrepresentation caused the Family Trust damages of $583,009. The jury also found that the Debtor concealed or suppressed a material fact with the intent to defraud Dr. Cunning, as trustee for the Family Trust, who was unaware of that fact when he acted, that Dr. Cunning would have acted differently on behalf of the Family Trust had he known of the concealed or suppressed fact, and that the concealment or suppression caused the Family Trust damages of $583,009. The jury further found that in committing fraud

against the Family Trust, the Debtor's conduct was oppressive and malicious and fraudulent, justifying an award of punitive damages of $500,000.

41. The entire amount of the judgment owed by the Debtor to Dr. Cunning on behalf of the Family Trust is nondischargeable under 11 U.S.C. § 523(a)(2)(A) because it was incurred through false pretenses, a false representation, actual fraud, and/or fraud in the inducement.

42. Accordingly, the entire amount of the judgment in favor of Dr. Cunning on behalf of the Family Trust is nondischargeable under 11 U.S.C. § 523(a)(2)(A).

## EIGHTH CLAIM FOR RELIEF

**(To determine nondischargeability of the judgment in favor of Dr. Cunning on behalf of the Family Trust under 11 U.S.C. § 523(a)(4))**

43. Plaintiff realleges and incorporates by this reference each and every allegation set forth in paragraphs 1 through 17 of this complaint.

44. In awarding Dr. Cunning on behalf of the Family Trust $583,009 in general damages, the jury found that the Debtor owed a fiduciary duty to the Family Trust, that he breached that fiduciary duty, and that the breach caused the Family Trust damages of $583,009. The jury further found that in committing the breach of fiduciary duty against the Family Trust, the Debtor's conduct was oppressive and malicious and fraudulent, justifying an award of punitive damages of $500,000.

45. Because the Debtor owed a fiduciary duty to the Family Trust and breached this duty, giving rise to the judgment against the Debtor in favor of Dr. Cunning on behalf of the Family Trust, the entire amount of the judgment should be determined to be nondischargeable under 11 U.S.C. § 523(a)(4).

## NINTH CLAIM FOR RELIEF

### (To determine nondischargeability of the judgment in favor of Dr. Cunning on behalf of the Family Trust under 11 U.S.C. § 523(a)(6))

46. Plaintiff realleges and incorporates by this reference each and every allegation set forth in paragraphs 1 through 17 of this complaint.

47. In awarding Dr. Cunning on behalf of the Family Trust $583,009 in general damages, the jury found that the Debtor wrongfully exerted dominion over Dr. Cunning, in his capacity as trustee of the Family Trust, and over the property of the Family Trust and that the conversion caused the Profit Sharing Plan damages of $574,631. The jury further found that in committing the tort of conversion, the Debtor acted oppressively, maliciously, and fraudulently, justifying an award of punitive damages of $500,000 against the Debtor in favor of Dr. Cunning on behalf of the Family Trust.

48. Because the entire amount of the judgment against the Debtor and in favor of Dr. Cunning on behalf of the Family Trust is the result of a willful and malicious injury to the Family Trust or its property, it should be determined to be nondischargeable under 11 U.S.C. § 523(a)(6).

**WHEREFORE,** Plaintiff prays for relief as follows:

### On All Claims for Relief

1. That the judgments owed by the Debtor to Dr. Cunning individually and on behalf of the Profit Sharing Plan and the Family Trust be declared nondischargeable pursuant to the provisions of 11 U.S.C. § 523(a);

2. For attorney's fees and costs; and

| | | |
|---|---|---|
| 1 | 3. Such other and further relief as the Court deems just and proper. | |
| 2 | DATED: February 27, 2006 | WEILAND, GOLDEN, SMILEY, WANG EKVALL & STROK, LLP |
| 3 | | |
| 4 | | By: /s/ Kyra E. Andrassy |
| 5 | | KYRA E. ANDRASSY Attorneys for Dr. Ronald Cunning, an individual and as trustee for the |
| 6 | | Ronald Cunning D.D.S., Inc. Profit Sharing Plan and Trust and the |
| 7 | | Cunning Family Trust |

| B. 104 (Rev. 8/99) | **ADVERSARY PROCEEDING SHEET** (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (For Court Use Only) |
|---|---|---|

| PLAINTIFFS | DEFENDANTS |
|---|---|
| Address | Address |

| ATTORNEYS (Firm Name, Address, and Telephone Number) **Bar ID:** | ATTORNEYS (if known) **Bar ID:** |
|---|---|
| Telephone #          Fax # | Telephone #          Fax # |

PARTY (Check one box only)     1  U.S. PLAINTIFF      2  U.S. DEFENDANT      3  U.S. NOT A PARTY

CAUSE OF ACTION (Write a brief statement of cause of action, including all U.S. statutes involved)

### NATURE OF SUIT
(Check the one most appropriate box only)

| | | |
|---|---|---|
| 454 To recover money or property | 455 To revoke an order of confirmation of a Chapter 11 or Chapter 13 Plan | 456 To obtain a declaratory judgment relating to any of the foregoing causes of action |
| 435 To determine validity, priority, or extent of a lien or other interest in property | 426 To determine the dischargeability of a debt 11 U.S.C. § 523 | 459 To determine a claim or cause of action removed to a bankruptcy court |
| 458 To obtain approval for the sale of both the interest of the estate and of a co-owner in property | 434 To obtain an injunction or other equitable relief | 498 Other (specify) |
| 424 To object or to revoke a discharge 11 U.S.C. § 727 | 457 To subordinate any allowed claim or interest except where such subordination is provided in a Plan | |

| **ORIGIN OF PROCEEDING** (Check one box only) | 1 Original Proceeding | 2 Removed Proceeding | 4 Reinstated or Reopened | 5 Transferred from Another Bankruptcy Court | CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 |
|---|---|---|---|---|---|

| **DEMAND** | NEAREST THOUSAND $ | OTHER RELIEF SOUGHT | JURY DEMAND |
|---|---|---|---|

### BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES

| NAME OF DEBTOR | BANKRUPTCY CASE NUMBER |
|---|---|

| DISTRICT IN WHICH CASE IS PENDING Central District of California | DIVISIONAL OFFICE | NAME OF JUDGE |
|---|---|---|

### RELATED ADVERSARY PROCEEDING (IF ANY)

| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NUMBER |
|---|---|---|
| DISTRICT | DIVISIONAL OFFICE | NAME OF JUDGE |

| **FILING FEE** (Check one box only) | FEE ATTACHED | FEE NOT REQUIRED | FEE IS DEFERRED |
|---|---|---|---|

| DATE | PRINT NAME | SIGNATURE OF ATTORNEY (OR PLAINTIFF) /S/ |
|---|---|---|

Adversary Proceeding Cover Sheet - *Page 2*      **B 104** (Rev 8/99)

| In re | CHAPTER |
|---|---|
| Debtor. | CASE NUMBER |

**Other Plaintiff(s) Listed on the Complaint**      **Attorney for Plaintiff(s) Listed on the Complaint**

1.      **Bar ID:**

     **Telephone #**      **Fax#**

2.      **Bar ID:**

     **Telephone #**      **Fax#**

3.      **Bar ID:**

     **Telephone #**      **Fax#**

4.      **Bar ID:**

     **Telephone #**      **Fax#**

5.      **Bar ID:**

     **Telephone #**      **Fax#**

**Other Defendant(s) Listed on the Complaint**      **Attorney for Defendant(s) Listed on the Complaint**

1.      **Bar ID:**

     **Telephone #**      **Fax#**

2.      **Bar ID:**

     **Telephone #**      **Fax#**

3.      **Bar ID:**

     **Telephone #**      **Fax#**

4.      **Bar ID:**

     **Telephone #**      **Fax#**

5.      **Bar ID:**

     **Telephone #**      **Fax#**

B-104
(Rev. 8/99)

**ADVERSARY PROCEEDING COVER SHEET (Reverse Side)**

This cover sheet must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney) and submitted to the Clerk of the Court upon the filing of a complaint initiating an adversary proceeding.

The cover sheet and the information contained on it *do not* replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. This form is required for the use of the Clerk of the Court to initiate the docket sheet and to prepare necessary indices and statistical records. A separate cover sheet must be submitted to the Clerk of the Court for each complaint filed. The form is largely self-explanatory.

**Parties.** The names of the parties to the adversary proceeding *exactly* as they appear on the complaint. Give the names and addresses of the attorneys if known. Following the heading "Party," check the appropriate box indicating whether the United States is a party named in the complaint.

**Cause of Action.** Give a brief description of the cause of action including all federal statutes involved. For example, "Complaint seeking damages for failure to disclose information, Consumer Credit Protection Act, 15 U.S.C. § 1601 et seq.," or "Complaint by trustee to avoid a transfer of property by the debtor, 11 U.S.C. § 544."

**Nature of Suit.** Place an "X" in the appropriate box. Only one box should be checked. If the cause fits more than one category of suit, select the most definitive.

**Origin of Proceedings.** Check the appropriate box to indicate the origin of the case:

1. Original Proceeding.
2. Removed from a State or District Court.
4. Reinstated or Reopened.
5. Transferred from Another Bankruptcy Court.

**Demand.** On the next line, state the dollar amount demanded in the complaint in thousands of dollars. For $1,000, enter "1," for $10,000, enter "10," for $100,000, enter "100," if $1,000,000, enter "1000." If $10,000,000 or more, enter "9999." If the amount is less than $1,000, enter "0001." If no monetary demand is made, enter "XXXX." If the plaintiff is seeking non-monetary relief, state the relief sought, such as injunction or foreclosure of a mortgage.

**Bankruptcy Case In Which This Adversary Proceeding Arises.** Enter the name of the debtor and the docket number of the bankruptcy case from which the proceeding now being filed arose. Beneath, enter the district and divisional office where the case was filed and the name of the presiding judge.

**Related Adversary Proceedings.** State the names of the parties and six-digit adversary proceeding number from any adversary proceeding concerning the same two parties or the same property currently pending in any bankruptcy court. On the next line, enter the district where the related case is pending and the name of the presiding judge.

**Filing Fee.** Check one box. The fee must be paid upon filing unless the plaintiff meets one of the following exceptions. The fee is not required if the plaintiff is the United States government or the debtor. If the plaintiff is the trustee or a debtor in possession and there are no liquid funds in the estate, the filing fee may be deferred until there are funds in the estate. (In the event no funds are ever recovered for the estate, there will be no fee.) There is no fee for adding a party after the adversary proceeding has been commenced.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the right of the last line of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is *pro se*, that is, not represented by an attorney, the plaintiff must sign.

The name of the signatory must be printed in the box to the left of the signature. The date of the signing must be indicated in the box on the far left of the last line.