ORIGINAL

1 James C. Bastian, Jr. – Bar No. 175415
  Mark Bradshaw – Bar No. 192540
2 **SHULMAN HODGES & BASTIAN LLP**
  26632 Towne Centre Drive, Suite 300
3 Foothill Ranch, California 92610-2808
  Telephone:    (949) 340-3400
4 Facsimile:    (949) 340-3000

5 Attorneys for Debtor



6

7

8                    **UNITED STATES BANKRUPTCY COURT**

9          **CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION**

10

11 In re                              )   Case No.  SA 06-10195 JR
                                      )
12 **LLOYD MYLES RUCKER,**            )   Chapter  7
                                      )
13          Debtor.                   )   Adv. No. 8:06-ap-01259 JR
   _____        )
14                                    )
   **DR. RONALD CUNNING, an individual**  )   **DEFENDANT'S OPPOSITION TO**
15 **and as trustee for the RONALD**      )   **MOTION FOR SUMMARY JUDGMENT;**
   **CUNNING D.D.S., INC. PROFIT**        )   **MEMORANDUM OF POINTS AND**
16 **SHARING PLAN AND TRUST  and the**    )   **AUTHORITIES AND DECLARATION**
   **CUNNING FAMILY TRUST,**             )   **OF LLOYD RUCKER IN SUPPORT**
17                                    )
          Plaintiffs,                 )   **[Statement of Genuine Issues filed**
18                                    )   **separately]**
   vs.                                )
19                                    )   Date:    June 28, 2006
   **LLOYD MYLES RUCKER,**           )   Time:    1:30 p.m.
20                                    )   Place:   Courtroom 5A
          Defendant.                  )            Ronald Reagan Federal Building
21                                    )            and United States Courthouse
                                      )            411 West Fourth Street
22                                    )            Santa Ana, California 92701
   _____        )
23

24        Lloyd Myles Rucker, the debtor in the above-referenced chapter 7 bankruptcy case and

25 the defendant in the above-referenced adversary proceeding ("Debtor" or "Defendant"), hereby

26 submits the following opposition to the Motion for Summary Judgment ("Motion") filed by

27 Ronald Cunning, D.D.S., the Ronald Cunning D.D.S., Inc. Profit Sharing Plan and Trust, and the

28 Cunning Family Trust (collectively, "Cunning" or "Plaintiffs"):

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

1

3559-000\G:\Wp\Cases\Q-R\Rucker\Adv\523 Action\MSJ.Opp.003.doc

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## BACKGROUND

In 1990, at the top of the market, and just as the savings and loan scandal was brewing, Cunning, a wealthy and sophisticated real estate investor, invested $1.1 million in two of three projects which the Debtor was then developing. Cunning invested through various investment vehicles in the 15th and 16th Street projects in Costa Mesa, California consisting of fifteen single family homes which were part of a planned unit development.

In 1991, Plaintiffs sued the Debtor for fraud, breach of contract, accounting and breach of fiduciary duty arising out of two joint ventures between the Debtor and the Plaintiffs. A receiver was appointed to manage and complete the construction projects that were the subject of the joint ventures.

The Debtor's supposed wrongdoing consisted only of the following facts. At the same time that the 15th and 16th Street projects were underway, the Debtor was developing a four home project on Ogle Street in Costa Mesa. The Debtor had received a loan commitment from Centennial Bank for the Ogle Street project. He ordered concrete, steel and other items for all three projects in order to obtain a discount for larger orders and broke ground on the Ogle Street project. When Centennial Bank failed and could not fund the construction loan, the Debtor sought replacement financing from Pacific National Bank.

Before that loan funded, the Debtor paid vendors on the Ogle Street project from an account on the 15th and 16th Street projects, an account from which he was due fees based on vouchers issued by the lender pursuant to the progress of that project toward completion. In other words the Debtor used funds from one project to pay expenses of another project, which funds he rightly or wrongly believed were owed to him personally such that he could use them to pay these expenses. Even assuming for the sake of argument that this conduct was entirely improper, the total amount used from the 15th and 16th Street projects to pay vendors on the Ogle Street project was only about $40,000. At that time, the Debtor believed pursuant to the joint venture agreement that he was personally entitled to supervision fees of $200,000.

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

1559-000\G:\Wp\Cases\Q-R\Rucker\Adv\523 Action\MSJ.Opp.003.doc

1    During the litigation, the accounting portion of the lawsuit proceeded before the Judicial
2  Arbitration and Mediation Services in Orange County. The Debtor was obligated to pay one half
3  of the fees and costs for the arbitration to JAMS. The Debtor did not have the financial
4  resources at that time to pay his half and filed applications to be relieved of that obligation. The
5  result was that the Debtor was permitted to attend the arbitration but was prohibited from
6  presenting *any* evidence to the arbitrator unless the Debtor paid 50% of the fees.

7    The Debtor did not have the funds to pay 50% of the JAMS fees, which were $30,000,
8  nor did the Debtor have the funds to pay 50% of the fees to the accountant, Kenneth Leventhal,
9  which were approximately $120,000. As a result, the Debtor was unable to present a defense,
10  the arbitrator made unusual findings based on partial information, and he ruled for the Plaintiffs
11  on all issues.

12    The arbitrator said there was a double escrow when none in fact existed. He also found
13  that Plaintiffs suffered a loss of $1.1 million, however, that loss is grossly disproportionate to the
14  Debtor's transfer of $40,000. The total construction costs for both the 15th and 16th Street
15  projects was less than $2.5 million. Thirty percent was paid down and construction loans were
16  obtained for the remaining 70%. When the homes in the project were sold, the lenders were paid
17  back 100%. At the outset of the project the estimate for each home sale was $360,000, with a
18  projected cost basis of $310,000 each for an estimated profit per home of $50,000 (i.e.,
19  $750,000 for the whole 15 home project). As a result of depressed market conditions in 1992
20  and partly as a result of Cunning's insistence that the homes be sold at auction rather than by
21  private sale, the homes only sold for $240,000 each. This resulted in an average loss of $70,000
22  per home and a total loss of $1,050,000 for the project. The Debtor was essentially held liable
23  for the $40,000 transfers plus the entire loss on the projects.

24    The arbitrator's findings were based on an accounting by Kenneth Leaventhal. It was
25  not disclosed to the court that Leaventhal was Cunning's personal accountant. The Debtor
26  moved to disqualify Leaventhal but the motion was denied solely because all of Leaventhal's
27  work had been completed.

28  ///

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

3559-000\G:\Wp\Cases\Q-R\Rucker\Adv\523 Action\MSJ Opp.003.doc

3

1     The trial court confirmed that arbitrator's award of $1.1 million and set a trial on all
2   matters for July 29, 1996.  However, by July 1996, the Debtor had been convicted of various
3   fraud charges and was incarcerated in Oregon.  The Debtor served 30 months in prison.  The
4   Debtor attempted to obtain a writ to allow him to attend the trial and separately filed a motion to
5   continue the trial.  The court denied the motion and denied the writ.

6     Trial commenced on August 6, 1996 and concluded on September 30, 1996, with the
7   Debtor unable to attend.  The Debtor was also unable to attend the punitive damages phase of the
8   trial.  The Debtor was prevented from testifying in person and from effectively assisting in his
9   own defense.

10    Judgment was entered against the Debtor on December 10, 1996 and that judgment was
11  amended on April 23, 1997, to reflect approximately $3.1 million, including punitive damages.

12    The Debtor filed a voluntary chapter 7 bankruptcy petition on October 12, 2005.
13  Plaintiffs filed the above-referenced non-dischargeability complaint in response to which the
14  Debtor filed an Answer denying substantially all of the allegations in the complaint.  For the
15  reasons that follow, the judgments against the Debtor should not be deemed nondischargeable in
16  the Debtor's bankruptcy case.

17                                              **II.**

18  **THE JUDGMENTS ARE NOT ENTITLED TO COLLATERAL ESTOPPEL EFFECT**

19    Collateral estoppel is also referred to an issue preclusion and arises according to one
20  treatise when the following factors are present: (1) the issue was actually litigated in a prior
21  proceeding; (2) there was a full and fair opportunity to litigate the issue at that time; (3) the issue
22  was actually decided in the first action; (4) a valid, final disposition of the issue in question was
23  made on the merits; (5) it was necessary to decide the issue in the first case; (6) the issue
24  occupied a high position in the first case; (7) the later litigation is between the same parties or
25  parties that are bound by the previous litigation; (8) the issue was foreseeably important at the
26  time of the first case; and (9) there are no special considerations, such as fundamental fairness,
27  which deny application of issue preclusion rules. JACK H. FRIEDENTHAL ET AL., CIVIL
28  PROCEDURE, § 4416, at 138 (1985).

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

4

3559-000\G:\Wp\Cases\Q-R\Rucker\Adv\523 Action\MSJ.Opp.003.doc

1    In California, collateral estoppel precludes relitigation of issues argued and decided in
2    prior proceedings. *Lucido v. Superior Court*, 51 Cal. 3d 335, 795 P.2d 1223, 1225, 272 Cal.
3    Rptr. 767 (Cal. 1990). California courts will apply collateral estoppel only if certain threshold
4    requirements are met, and then only if application of preclusion furthers the public policies
5    underlying the doctrine. *See* 795 P.2d at 1225, 1226. The court has identified various threshold
6    requirements:

7        First, the issue sought to be precluded from relitigation must be identical to that decided
8    in a former proceeding. Second, this issue must have been actually litigated in the former
9    proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the
10   decision in the former proceeding must be final and on the merits. Finally, the party against
11   whom preclusion is sought must be the same as, or in privity with, the party to the former
12   proceeding. *Id.* at 1225. The party asserting collateral estoppel bears the burden of establishing
13   these requirements. *Id.*

14       With respect to the first element (i.e., identical issues), Plaintiffs assert that all that is
15   needed is the fact of an adverse fraud judgment. (Mot. 8:25-26.) They cite *Muegler v. Bening*,
16   413 F.3d 980, 984 (9th Cir. 2005) for this principle. *Muegler* is a case decided under Missouri
17   law, not California law. More significantly, the statement in *Muegler* that "nothing more" is
18   required than a prior fraud judgment is based on a distinction made in *Muegler* from prior law.
19   The *Muegler* court only states that receipt of a benefit is no longer an element of fraud. *Id.* In
20   other words, there need not be a judgment and a benefit, just a judgment. That does not mean
21   that once there is a judgment it is conclusively determined that whatever issues were raised in the
22   prior judgment are the same as those raised in any later lawsuit based on Section 523(a)(2)(A).
23   *Muegler* does not stand for that broad proposition. Courts must independently look at the issues
24   raised in the prior judgment <u>and</u> in the non-dischargeability lawsuit to determine whether the
25   issues are identical.

26       As noted above, it is the movant's burden to establish that the issues are identical. There
27   is no evidence in the Motion that the issues in the Cunning Judgment (as defined in the Motion)
28   and the non-dischargeability lawsuit are identical. There is only a conclusory statement in the

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

5

3559-000\G.\Wp\Cases\Q-R\Rucker\Adv\523 Action\MSJ Opp.003.doc

1  Motion that there was a prior judgment and that such judgment should suffice. That is
2  insufficient to carry the Plaintiffs' burden.

3       With respect to the second element (i.e., actually litigated), Plaintiffs state that the Debtor
4  was represented by counsel, that the trial lasted several weeks, and that the Debtor was aware of
5  the trial. (Mot. 9:5-11.) Plaintiffs have offered no declaration or documentary evidence to
6  support any of these statements. Even assuming for the sake of argument that the Plaintiffs had
7  introduced competent and admissible evidence to support those facts, they omit the fact that the
8  Debtor did not have counsel present at the arbitration on the accounting issues, that the Debtor
9  was prevented from presenting any evidence at the arbitration, and that the Debtor was prevented
10 from assisting in his own defense at the trial including being unable to testify in court.

11      Plaintiffs suggest that collateral estoppel applies even to default judgments and that the
12 Debtor's situation was not a default judgment because the judgment was rendered after a trial.
13 (Mot. 9, fn. 3.) The Debtor's situation is more analogous to a default judgment than a trial on the
14 merits because the arbitrator did not have the benefit of <u>any</u> evidence from the Debtor and the
15 Debtor was prevented from testifying in court or otherwise effectively aiding his own defense.
16 Plaintiffs assert that a default judgment is entitled to collateral estoppel effect "as long as the
17 defendant was personally served with the summons or had actual knowledge of the existence of
18 the litigation" and they cite to *Cal-Micro, Inc. v. Cantrell (In re Cantrell)*, 329 F.3d 1119, 1124
19 (9th Cir. 2003) for that principle. (*Id.*) The Plaintiffs' case citation is incomplete and misleading.
20 The *Cantrell* court stated in relevant part as follows:

21       The mere fact that "judgment was secured by default does not warrant the
22  application of a special rule." *Williams v. Williams (In re Williams' Estate)*, 36
     Cal. 2d 289, 223 P.2d 248, 252 (Cal. 1950). California law does, however, place
23  <u>two limitations</u> on this general principle. The first is that collateral estoppel
     applies only if the defendant "has been personally served with summons or has
24  actual knowledge of the existence of the litigation." *In re Harmon*, 250 F.3d at
     1247 (quoting *Williams*, 223 P.2d at 254). Collateral estoppel, therefore, only
25  applies to a default judgment to the extent that the defendant had actual notice of
26  the proceedings and a "<u>full and fair opportunity to litigate</u>." 250 F.3d at 1247 n.6.

27       The second limitation, in the context of a default judgment, is that a decision has a
     preclusive effect in later proceedings "<u>only where the record shows an express</u>
28  <u>finding upon the allegation</u>" for which preclusion is sought. *Williams*, 223 P.2d at

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

6

3559-000\G:\Wp\Cases\Q-R\Rucker\Adv\523 Action\MSJ.Opp.003.doc

254. But, as we recognized in *In re Harmon*, "the express finding requirement can be waived if the court in the prior proceeding necessarily decided the issue." 250 F.3d at 1248. In such circumstances, an express finding is not required because "if an issue was necessarily decided in a prior proceeding, it was actually litigated." *Id.*

*Cantrell*, 329 F.3d at 1123-24 (emphasis added).

The Supreme Court has recognized that "the judicially created doctrine of collateral estoppel does not apply when the party against whom the earlier decision is asserted did not have a "full and fair opportunity" to litigate the claim or issue." *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 480-81, 102 S. Ct. 1883, 1897 (1982). Similarly, the Court noted that "Redetermination of issues is warranted if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation." *Id.*

The Ninth Circuit has stated that "[a] party who deliberately precludes resolution of factual issues through normal adjudicative procedures may be bound, in subsequent, related proceedings involving the same parties and issues, by a prior judicial determination reached without completion of the usual process of adjudication. In such a case the 'actual litigation' requirement n5 may be satisfied by substantial participation in an adversary contest in which the party is afforded a reasonable opportunity to defend himself on the merits but chooses not to do so." *FDIC v. Daily (In re Daily)*, 47 F.3d 365, 368 (9th Cir. 1995). As set forth in Mr. Rucker's declaration attached hereto, the Debtor wanted to present evidence to the arbitrator in connection with the accounting issues but could not afford to pay the required fees. He also wanted to attend the trial, including the punitive damages phase, and testify in person in his defense but he was prevented from doing so. This was not a situation as in *Daily* where the Debtor was "afforded a reasonable opportunity to defend himself on the merits but chose not to do so." The circumstances surrounding the Debtor's ability to participate in the arbitration and trial call into doubt the quality, extensiveness, and fairness of procedures followed. As such, none of the judgments should have collateral estoppel effect and Plaintiffs should have to prove their claims on the merits.

In summary, with respect to the "actually litigated" element, the Plaintiffs have not offered evidence to support their allegations that the issues were actually litigated, they have

7

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

3559-000\G:\Wp\Cases\Q-R\Rucker\Adv\523 Action\MSJ Opp.003.doc

1 omitted the fact that the Debtor was prohibited from offering evidence and attending trial, they
2 have not carried their burden to show that the Debtor had a full and fair opportunity to litigate the
3 issues, and finally as discussed further below, they have not provided a record with express
4 findings but rather a record with conflicting and confusing findings.

5 The findings upon which Plaintiffs base their Motion are at a minimum inconsistent and
6 on their face dictate that summary judgment is not appropriate. In support of the Motion,
7 Plaintiffs have attached special findings regarding fraud and deceit concerning plaintiff Dr.
8 Ronald Cunning. (*See* Plaintiffs' RJN Ex. 3.) Question number 5 asks "[w]as the plaintiff aware
9 of the falsity of the representation?" (emphasis added). The answer to this question by the jury
10 was "yes". If the plaintiff (i.e., Dr. Cunning) was aware that the statements made to him by the
11 Debtor were false, which is precisely what the jury found, Cunning could not have reasonably
12 relied on those statements and therefore such statements cannot give rise to a non-dischargeable
13 judgment under Bankruptcy Code Section 523(a).

14 Similarly, in support of the Motion the Plaintiffs have also attached special findings
15 regarding fraud and deceit concerning plaintiff Ronald Cunning as trustee for the Ronald
16 Cunning Profit Sharing Plan and Trust. (*See* Plaintiffs' RJN Ex. 9.) Question number 5 asks
17 "[w]as the plaintiff aware of the falsity of the representation?" (emphasis added). The answer to
18 this question by the jury was (again) "yes". If the plaintiff (i.e., Cunning on behalf of the Profit
19 Sharing Plan and Trust) was aware that the statements made to him by the Debtor were false,
20 which is again precisely what the jury found, the plaintiff could not have reasonably relied on
21 those statements.

22 The Plaintiffs also attached special findings regarding fraud and deceit concerning
23 plaintiff Ronald Cunning as trustee for the Cunning Family Trust. (*See* Plaintiffs' RJN Ex. 15.)
24 Question number 5 asks "[w]as the plaintiff aware of the falsity of the representation?"
25 (emphasis added). The answer to this question by the jury was (again) "yes". If the plaintiff
26 (i.e., Cunning on behalf of the Cunning Family Trust) was aware that the statements made to him
27 by the Debtor were false, which is again precisely what the jury found, the plaintiff could not
28 have reasonably relied on those statements.

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

8

3559-000\G:\Wp\Cases\Q-R\Rucker\Adv\523 Action\MSJ.Opp.003.doc

1        The special findings do not state whether each of the Plaintiffs' reliance on the statement

2  was reasonable. However, question number 7 asks whether the plaintiff was "justified" in

3  relying on the representation. The response provided by the jury to that question is "yes" for

4  each plaintiff. The findings by the jury are confusing, inconsistent, and are insufficient to

5  support non-dischargeability based on collateral estoppel. One the one hand the jury found that

6  the Plaintiffs were aware of the falsity of the statements and on the other hand the jury found that

7  the Plaintiffs were justified in relying on those representations. The Plaintiffs should not be

8  permitted to rely on inconsistent findings for purposes of conclusively establishing a severe

9  remedy such as non-dischargeability of a debt. This is especially true given that the Plaintiffs

10  have the burden to prove each element of their non-dischargeability claim by a preponderance of

11  the evidence and because exceptions to discharge under section 523 are to be narrowly

12  construed. *See, Harmon v. Kobrin (In re Harmon)*, 250 F.3d 1240, 1246 (9th Cir. 2001); *Su v.*

13  *Carrillo (In re Su)*, 259 B.R. 909, 912 (B.A.P. 9th Cir. 2001). Therefore, collateral estoppel

14  should not apply and the Motion should be denied.

15  **III.**

16  **CONCLUSION**

17        For the reasons set forth herein, the Debtor respectfully requests that the Motion be

18  denied in its entirety.

19

20  Dated: June 7, 2006              Respectfully submitted,

21                              **SHULMAN HODGES & BASTIAN LLP**

22

23

24                              Mark Bradshaw

25                              Attorneys for Debtor

26

27

28

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

9

3559-000\G:\Wp\Cases\Q-R\Rucker\Adv\523 Action\MSJ.Opp.003.doc

# DECLARATION OF LLOYD MYLES RUCKER

I, Lloyd Myles Rucker, declare:

1.    I am the debtor in the bankruptcy case of In re Lloyd Myles Rucker, Case No. SA 06-10195 JR. I have personal knowledge of the facts set forth herein and could, if called as a witness, competently testify thereto. I make this declaration in support of my opposition to the Motion for Summary Judgment filed by Ronald Cunning, D.D.S., the Ronald Cunning D.D.S., Inc. Profit Sharing Plan and Trust, and the Cunning Family Trust (collectively, "Cunning" or "Plaintiffs").

2.    I graduated from the University of Southern California with a degree in business and I currently work in the real estate mortgage industry. In 1990, I was working on real estate development projects in Southern California including projects at 15th and 16th Street in Costa Mesa, California. The 15th and 16th Street projects consisted of fifteen single family homes which were part of a planned unit development.

3.    In 1990, at the top of the real estate market and just as the savings and loan scandal was brewing, I was introduced to Cunning who represented to me that he was a wealthy and sophisticated real estate investor.

4.    Cunning purchased the 15th street property from me. Approximately six months later a joint venture agreement was signed. Cunning used the equity in the 15th Street property as part of a 30% down payment required for a construction loan on the project.

5.    In 1991, Plaintiffs sued me for fraud, breach of contract, accounting and breach of fiduciary duty arising out of 15th and 16th Street projects. A receiver was appointed to manage and complete the construction projects.

6.    At the same time that the 15th and 16th Street projects were underway, I was developing a four home project on Ogle Street in Costa Mesa. I had received a loan commitment from Centennial Bank for the Ogle Street project. I ordered concrete, steel and other items for all three projects in order to obtain a discount for larger orders and broke ground on the Ogle Street project. When Centennial Bank failed and could not fund the construction loan, I sought replacement financing from Pacific National Bank.

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

3559-000\G:\Wp\Cases\Q-R\Rucker\Adv\523 Action\MSJ Opp.003.doc

1      7.     Before that loan funded, I paid vendors on the Ogle Street project from an account
2 on the 15th Street project, an account from which I was owed fees based on vouchers issued by
3 the lender pursuant to the progress of that project.

4      8.     The total amount used from the 15th and 16th Street projects to pay vendors on the
5 Ogle Street project was about $40,000. At that time, I believed pursuant to the joint venture
6 agreement that I was personally entitled to supervision fees of $200,000.

7      9.     During the litigation, the accounting portion of the lawsuit proceeded before the
8 Judicial Arbitration and Mediation Services in Orange County. I was told I had to pay one half
9 of the fees and costs for the arbitration to JAMS. I did not have the financial resources at that
10 time to pay and filed applications to be relieved of that obligation. The result was that I was
11 permitted to attend the arbitration but was prohibited from presenting *any* evidence to the
12 arbitrator.

13    10.    I did not have the funds to pay 50% of the JAMS fees, which were $30,000, nor
14 did I have the funds to pay 50% of the fees to the accountant, Kenneth Leaventhal, which were
15 approximately $120,000. As a result, I was unable to present a defense, the arbitrator made
16 unusual findings based on partial information, and he ruled for the Plaintiffs on all issues.

17    11.    I have reviewed the arbitrator's statement which said there was a double escrow.
18 There was never any double escrow involved in these transactions.

19    12.    The arbitrator also said that Plaintiffs suffered a loss of $1.1 million, however,
20 that loss is grossly disproportionate to the transfer of $40,000 noted above. Plaintiffs'
21 investment in the joint ventures was investment capital and 100% at risk. The Debtor was
22 essentially held to bear all of the risk of loss for the project.

23    13.    The total construction costs for both the 15th and 16th Street projects were less
24 than $2.5 million. Thirty percent was paid down and construction loans were obtained for the
25 remaining 70%. When the homes in the project were sold, the lenders were paid back 100%.

26    14.    At the outset of the project the estimate for each home sale was $360,000, with a
27 projected cost basis of $310,000 each, for an estimated profit per home of $50,000 (i.e.,
28 $750,000 for the whole 15 home project). As a result of depressed market conditions in 1992

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

11

3559-000\G:\Wp\Cases\Q-R\Rucker\Adv\523 Action\MSJ Opp.003.doc

1   and partly as a result of Cunning's insistence that the homes be sold at auction rather than by
2   private sale, the homes only sold for $240,000 each. This resulted in an average loss of $70,000
3   per home and a total loss of $1,050,000 for the project.

4       15.     During the development of the 15th and 16th Street projects, Plaintiffs had full
5   access to the bank's records for these projects and had power to sign on the bank accounts.

6       16.     I am informed that the arbitrator's findings were based on an accounting by
7   Kenneth Leaventhal. It was not disclosed to me or the court that Leaventhal was Cunning's
8   personal accountant. I filed a motion to disqualify Leaventhal but the motion was denied solely
9   because all of Leaventhal's work had already been completed.

10      17.     I am informed that the trial court confirmed that arbitrator's award of $1.1 million
11  and set a trial on all matters for July 29, 1996. However, by July 1996, I had been convicted of
12  various fraud charges and was incarcerated in Oregon. I served 30 months in prison. I attempted
13  to obtain a writ to allow me to attend the trial and separately filed a motion to continue the trial.
14  The court denied the motion and denied the writ.

15      18.     I am informed that the trial commenced on August 6, 1996 and concluded on
16  September 30, 1996. I was prevented from attending. I was also prevented from attending the
17  punitive damages phase of the trial. I was prevented from testifying in person and from
18  effectively assisting in my own defense.

19      19.     I am informed that Judgment was entered against me on December 10, 1996 and
20  that the judgment was amended on April 23, 1997, to reflect approximately $3.1 million,
21  including punitive damages.

22      20.     I filed a voluntary chapter 7 bankruptcy petition on October 12, 2005. Plaintiffs
23  filed the above-referenced non-dischargeability complaint in response to which I filed an answer
24  denying substantially all of the allegations in the complaint.

25  ///
26  ///
27  ///
28  ///

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

3559-000\G:\Wp\Cases\Q-R\Rucker\Adv\523 Action\MSJ.Opp.003.doc

1    I declare under penalty of perjury under the laws of the United States of America that the

2    foregoing is true and correct.

3    Executed on June 7, 2006, at _____ **SEE FACSIMILE** California.
                                      **SIGNATURE ATTACHED**
4

5    _____
     **Lloyd Myles Rucker**

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

13

1    I declare under penalty of perjury under the laws of the United States of America that the

2    foregoing is true and correct.

3    Executed on June 7, 2006,

4

5    _____
     **Lloyd Myles Rucker**

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

13

2539-000\131W\pICases\Q-JR\Rucker\Adv\523 Autism\MSJ.Opp.803.doc

## PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF ORANGE

I am employed in the City of Foothill Ranch, County of Orange, State of California. I am over the age of 18 years and not a party to the within action. My business address is 26632 Towne Centre Drive, Suite 300, Foothill Ranch, California 92610.

On **June 7, 2006,** I served the documents named below on the parties in this Action as follows:

**DOCUMENT(S) SERVED:** **DEFENDANT'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF LLOYD RUCKER IN SUPPORT**

**SERVED UPON:** SEE THE ATTACHED SERVICE LIST

[X] (BY MAIL) I caused each such envelope, with postage thereon fully prepaid, to be placed in the United States mail at Foothill Ranch, California. I am readily familiar with the practice of Shulman Hodges & Bastian LLP for collection and processing of correspondence for mailing, said practice being that in the ordinary course of business, mail is deposited in the United States Postal Service the same day as it is placed for collection. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after deposit for mailing in affidavit.

[ ] (BY FACSIMILE) The above-referenced document was transmitted by facsimile transmission and the transmission was reported as completed and without error. Pursuant to C.R.C. 2009(i), I either caused, or had someone cause, the transmitting machine to properly transmit the attached documents to the facsimile numbers shown on the service list.

[ ] (BY OVERNIGHT DELIVERY) I am readily familiar with the practice of Shulman Hodges & Bastian LLP for collection and processing of documents for overnight delivery and know that the document(s) described herein will be deposited in a box or other facility regularly maintained by Federal Express or Overnite Express for overnight delivery or by Express Mail via the United States Postal Service.

[ ] (BY E-MAIL OR ELECTRONIC TRANSMISSION) Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the document(s) to be sent to the persons at the e-mail addresses as listed above and/or on the attached Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

[ ] (BY PERSONAL SERVICE) I delivered to an authorized courier or driver authorized by ASAP Corporate Services, Inc. to receive documents to be delivered on the same date. A proof of service signed by the authorized courier shall be filed upon receipt from ASAP Corporate Services, Inc.

[ ] (STATE) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

[X] (FEDERAL) I declare that I am employed in the office of a member of the bar of this court, at whose direction this service was made. I declare under penalty of perjury that the foregoing is true and correct.

Executed on **June 7, 2006,** at Foothill Ranch, California.

Patricia A. Britton

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

3559-000\G:\Wp\Cases\Q-R\Rucker\Adv\523 Action\MSJ.Opp.003.doc

1

2 **INTERESTED PARTY**
Office of the U.S. Trustee
3 Attn: Michael Hauser
411 W. Fourth St., Suite 9041
4 Santa Ana, CA 92701

5 **CHAPTER 7 TRUSTEE**
Thomas H. Casey, Trustee
6 22342 Avenida Empresa, Suite 260
Rancho Santa Margarita, CA 92688

7 **COUNSEL FOR PLAINTIFFS**
8 Evan D. Smiley, Esq.
Weiland Golden Smiley Wank
9 Ekvall & Strok LLP
650 Town Center Dr., Suite 950
10 Costa Mesa, CA 92626

11 **DEBTOR**
Lloyd Myles Rucker
P O Box 875
12 110 Washington Avenue #1724
Miami Beach, FL 33119

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

3559-000\G:\Wp\Cases\Q-R\Rucker\Adv\523 Action\MSJ.Opp.003.doc